**SIERRA CLUB, Plaintiff–Appellant,**

v.

**Leon LARSON, Regional Administrator; Federal Highway Administration; D.J. Algobelli, Administrator; Elizabeth Dole, Secretary, Department of Transportation; Walter P. Ragin, Chief Commissioner, South Carolina Department of Highways and Public Transportation; State of South Carolina, Defendants–Appellees.**

No. 88–2175.

United States Court of Appeals, Fourth Circuit.

Argued March 9, 1989.

Decided Aug. 17, 1989.

Stephen E. O'Day (Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., Frederick S. Middleton, III, Southern Environmental Law Center, on brief) for plaintiff-appellant.

Douglas Neal Letter (John R. Bolton, Asst. Atty. Gen., Washington, D.C., Vinton DeVane Lide, U.S. Atty., Columbia, S.C., Leonard Schaitman, Marleigh D. Dover, Civ. Div., Dept. of Justice, Washington, D.C., on brief), William Lane Todd, Asst. Chief Counsel (Victor S. Evans, Chief Counsel, South Carolina Dept. of Highways and Public Transp., Columbia, S.C., on brief), for defendants-appellees.

Before HALL and WILKINSON, Circuit Judges, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

DOUMAR, District Judge:

In this case the Sierra Club (appellant) seeks judicial review of certain agency action conducted by the Federal Highway Administration (FHWA) and the United States Department of Transportation (ap-

pellees). The Sierra Club appeals the decision by the district court granting appellees' motion for judgment on the pleadings and finding that the agency action in question was not subject to judicial review. We affirm.

I

Originally, the Sierra Club sought declaratory and injunctive relief against the FHWA and the United States Department of Transportation in the United States District Court for the Northern District of Georgia. The appellant alleged that the appellees had failed to enforce provisions of the Highway Beautification Act (HBA or Act), 23 U.S.C. § 131, regarding outdoor advertising in South Carolina. The district court dismissed appellant's complaint, holding that appellees' discretionary authority under the Act was precluded from judicial review under the terms of the statute and the doctrine of prosecutorial discretion. Sierra Club appealed this decision to the Eleventh Circuit which vacated and remanded to the district court to transfer the case to the United States District Court for the District of South Carolina for further proceedings. In so ruling the Eleventh Circuit held that joinder of South Carolina as a party to the lawsuit was required in order to obtain complete relief, avoid multiple litigation over a single issue and to effectuate congressional intent. *Sierra Club v. Leathers*, 754 F.2d 952 (11th Cir.1985).

Once transferred, appellant filed an amended complaint by which the state of South Carolina was added. Appellees' motion for judgment on the pleadings was granted based on the district court's finding that the FHWA made a decision not to undertake enforcement proceedings against South Carolina and that this decision was committed to agency discretion by law and not subject to judicial review because there was no law to apply. The district court relied on *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), in making its decision. This appeal followed.

II

Pursuant to the HBA, each state that participates in its highway beautification program is responsible for enforcing the requirements of the Act by exercising "effective control" over outdoor advertising. The requirements are defined by the Act, federal regulations and an agreement entered into between the state and the Secretary of Transportation (Secretary). It is up to the Secretary, acting through the FHWA, to monitor compliance. 23 C.F.R. § 1.37 (1983); 49 C.F.R. § 1.48(b)(21), (c)(11) (1982). If the Secretary determines, based on recommendations from the FHWA Administrator, that a state is not maintaining "effective control," she may institute formal enforcement proceedings and ultimately withhold 10% of federal highway funds until compliance is achieved. 23 U.S.C. § 131(b). However, if the Secretary determines it to be "in the public interest" she may suspend the withholding of funds. 23 U.S.C. § 131(b). The withholding decisions and the decision to commence enforcement proceedings are reserved exclusively to the Secretary, but the FHWA initially seeks compliance through less formal means. 49 C.F.R. § 1.44(j) (1982).

The regulations authorize the FHWA Administrator to delegate to Division and Regional offices the initial duty to make investigations and consult with state officials when violations are suspected. 49 C.F.R. § 1.45(b) (1982). The Division may recommend to the Regional Administrator that enforcement proceedings commence. The Regional Administrator may conduct more informal proceedings and/or make recommendations to the FHWA Administrator. The Administrator may issue a warning letter as a final step before recommending to the Secretary that enforcement proceedings commence. The Secretary may make more informal gestures before deciding whether to institute proceedings. If proceedings are instituted, and the decision is adverse to the state, and the Secretary does not waive the fund penalty, the state may appeal to a federal court. 23 U.S.C. § 131(*l*). The statute and regulations do not mandate that enforcement actions be

taken by anyone in this chain, and only the Secretary may make the decision to proceed with enforcement. This is usually done only after all informal means fail.

In early 1981, the FHWA conducted a fact-finding investigation in South Carolina, based partially on complaints by Dr. Charles Floyd, Chairman of the Department of Real Estate and Urban Development, University of Georgia. The resultant report indicated that South Carolina was not maintaining "effective control" over its outdoor advertising and recommended that corrective steps be taken. On September 9, 1981, the Regional Administrator advised Dr. Floyd by letter that the report was merely a draft which he had now reviewed. He declined to take any further corrective action because he was "satisfied with actions already taken or planned courses of action by South Carolina ... in assuring compliance with federal requirements for outdoor advertising." The letter addressed numerous points and outlined steps taken or planned to be taken by the state and FHWA to correct problems. He noted finally that the FHWA was undertaking an "overall assessment of the outdoor advertising program throughout this region." On January 7, 1982, the Regional Administrator wrote Dr. Floyd to notify him that the overall assessment was complete and had resulted in the development of Regional policy on four issues and that no further action, outside routine monitoring, would be taken.

### III

### A.

Review of the Secretary's action in this case is sought under the provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 et seq., which provides for review of final agency actions. "Agency actions" are defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act ..." 5 U.S.C. § 551(13). Both an agency's failure to act and its affirmative actions are subject to review. However, the APA provides two exceptions to judicial review in § 701(a).

These occur when the "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." Appellees claim that exception (2) is applicable to this case.

The district court's order granting appellees' motion for judgment on the pleadings should only be upheld if it appears beyond doubt that the appellant cannot prove any set of facts that would entitle him to relief. *Caddell v. Singer*, 652 F.2d 393 (4th Cir. 1981). Reviewability is a threshold jurisdictional question that must be determined before the merits of the case may be reached.

The Supreme Court first considered the exception to the general rule of reviewability of § 701(a)(2) in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The Court reviewed a challenge to the Secretary of Transportation's approval of federal funds for the building of an interstate highway through a park in Memphis. The applicable statute provided that the Secretary "shall not approve any program or project which requires the use of any publicly owned" parkland unless he first finds that no "feasible and prudent" alternative route exists, and that "all possible planning to minimize harm" to the park has taken place. 23 U.S.C. § 138; 401 U.S. at 405, n. 3, 91 S.Ct. at 818, n. 3. The Court, in reviewing the Secretary's decision, noted that the exception under 701(a)(2) for action committed to agency discretion is "very narrow" and is "applicable in those rare circumstances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" 401 U.S. at 410, 91 S.Ct. at 820–21 (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)). In *Overton Park*, the statutes provided a meaningful standard against which to judge the Secretary's decision.

The Supreme Court met 701(a)(2) again in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) in which prisoners condemned to die by lethal injection petitioned the FDA, alleging that use of lethal injection violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C.

§ 301, et seq. (FDCA). They claimed that the drugs had not been tested for the purposes for which they were to be used and administration of the drug was likely to result in severe pain. They requested the FDA to prevent their use through an enforcement action, which the FDA refused to do. The Court distinguished this issue from the one in *Overton Park* by stating that *"Overton Park* did not involve an agency's refusal to take requested enforcement action. It involved an affirmative act of approval under a statute that set clear guidelines for determining when such approval should be given." 470 U.S. at 831, 105 S.Ct. at 1655. By contrast, the FDA had made a decision not to exercise its enforcement authority.

The Court then described the difficulties inherent in appellate scrutiny of an agency's decision not to enforce its statute. These included the fact that an agency is better suited than courts "to deal with the many variables involved in the proper ordering of its priorities." 470 U.S. at 831–32, 105 S.Ct. at 1656. In addition, the Court noted that "when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." 470 U.S. at 832, 105 S.Ct. at 1656. The Court also found that a decision not to enforce is akin to a decision not to prosecute, which decisions have long been regarded as within the province of the Executive Branch under Article II, Section 3 of the United States Constitution. *Id.* These factors led to the Court's conclusion that the presumption of reviewability normally accorded agency action does not apply to agency decisions not to undertake enforcement actions. Instead, the Court held that a "decision not to take enforcement action should be presumed immune from judicial review under 701(a)(2)" as action committed to agency discretion by law. *Id.*

The Court then found that "the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." 470 U.S. at 832–33, 105 S.Ct. at 1656 (footnote omitted). This is similar to *Overton Park's* "no law to apply" standard and involves a determination as to whether Congress has limited "an agency's exercise of enforcement powers ... either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue." 470 U.S. at 833, 105 S.Ct. at 1656. The Court cited *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975) as an example of a case where this presumption was overcome by the statute's substantive guidelines. *Id.*

In *Chaney,* the statute at issue was the general enforcement provision which stated that "the Secretary is authorized to conduct examinations and investigations ..." 21 U.S.C. § 372, but it contained no specific standards as to when the provisions should be applied. Neither did the various provisions which described available sanctions. 470 U.S. at 835, 105 S.Ct. at 1657–58. The provisions authorized, but did not compel the agency to act. The Court determined then that the enforcement provisions of the FDCA did not overcome the presumption of unreviewability. Therefore, "[t]he FDA's decision not to take the enforcement actions requested by respondents is ... not subject to judicial review under the APA." 470 U.S. at 837–38, 105 S.Ct. at 1659.

In the present case, appellant attempts to characterize the Regional Administrator's letter of September 9, 1981, to Dr. Floyd as a finding, after an investigation, that South Carolina was maintaining effective control. It contends that this settled the matter of South Carolina's compliance with the Act and permitted release of federal highway funds without the mandatory ten percent reduction. It argues that this letter constituted final, reviewable, agency action because it listed reasons why South Carolina was in compliance and because no further action has been taken against South Carolina. Even though the statute does not explicitly allow for judicial review of this action, as it does when the Secretary withholds funds, appellant contends that this does not support an implication that a

final determination of compliance is excluded from review. *Citing Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Appellant compares the agency's action in this case to the action undertaken in *Overton Park* by claiming the FHWA's action was not an enforcement decision, but was an "affirmative act of approval" of federal funding, reviewable under the "clear guidelines" set forth in the statute and regulations. 470 U.S. at 831, 105 S.Ct. at 1655.

Appellees claim that the agency made an unreviewable decision not to recommend a formal penalty action and that *Overton Park* is inapplicable. We agree. *Overton Park* is inapposite because it involved a decision by the Secretary to provide funds under a statute that required a specific determination to be made before those funds could be released. In this case South Carolina already receives federal highway funds and the decision by the Regional Administrator was a non-coercive one declining to proceed toward further action to withhold a portion of these funds. If Congress had intended that each state's compliance be reviewed before it received funds, it could have structured the statute to that end. However, the statute does not require that the Secretary investigate each state and determine compliance prior to disbursement.

Instead, judicial review is intended to protect states from arbitrary cut-offs of the funds that they are provided—not to check the Secretary's decision to encourage compliance through informal means or to determine that an enforcement action is unnecessary in a given state. The HBA gives the Secretary broad discretion in choosing which states to investigate, whether to institute enforcement proceedings and whether to withhold funds. In this instance, the agency exercised its discretion, after an investigation, by declining to proceed any further against South Carolina. This is clearly a decision not to enforce the statute as opposed to an affirmative decision of compliance. Since we have determined that this was an agency

decision not to seek enforcement of a statute, it is presumptively unreviewable under *Chaney*.

Appellant argues that if this Court considers the agency's action to be an enforcement decision, it has overcome the presumption of unreviewability because the statute provides "law to apply." It points out that the statute provides clear guidelines for determining if a state is exercising "effective control."

It is true that the statute and regulations define "effective control" but this is to forewarn states of their obligations under the law, not a requirement that the Secretary follow these guidelines when deciding whether to bring an enforcement action. These guidelines are used to determine a state's compliance once the Secretary goes forward with an enforcement action and may be used by a court to review the Secretary's decision. They are not standards which govern the threshold decision of whether to formally enforce the statute by withholding funds from a particular state. The relevant question here is whether the HBA provides standards for ascertaining when the FHWA should recommend that formal enforcement proceedings be commenced or when the Secretary is *required* to make a determination of compliance or non-compliance or to institute an enforcement action. As to these points, the statute is silent. Therefore, there is no law to apply and appellant has failed to overcome the presumption of unreviewability. We hold that the agency action involved in this case is the type shielded from judicial review under 5 U.S.C. § 701(a)(2) as actions committed to agency discretion by law.

Appellant also maintains that the federal appellees have abdicated their responsibility to ensure compliance with the HBA in Region IV (of which South Carolina is a part). It claims that this constitutes a material issue of fact which should have defeated appellees' motion. It bases its argument on *Chaney*, 470 U.S. at 833, n. 4, 105 S.Ct. at 1656, n. 4 in which the Court stated that *Chaney* did not present a case in which "the agency has 'consciously and

expressly adopted a policy' that is so extreme as to amount to an abdication of its responsibilities," *quoting Adams v. Richardson*, 480 F.2d 1159 (D.C.Cir.1973), and "express[ed] no opinion on whether such decisions would be unreviewable under § 701(a)(2)...." This exception has been applied in order to review agency decisions that would normally be unreviewable under *Chaney*. *See Northern Indiana Public Service Co. v. FERC*, 782 F.2d 730, 745 (7th Cir.1986).

Even if this Court were to accept appellant's interpretation of the Supreme Court's footnote, that total abdication of responsibility enables judicial review of normally unreviewable discretionary decisions, appellant's own brief reveals that the FHWA did take action after receiving Dr. Floyd's complaints. It conducted a fact-finding investigation, drafted recommendations and met with South Carolina officials to assure future compliance and monitored their actions towards compliance. These actions may not have satisfied the appellant, but they demonstrate that the FHWA has not abdicated its responsibilities under the HBA. The district court properly found that there was no material issue of fact prior to granting judgment to the appellees on the basis of the pleadings.

This case aptly demonstrates the separation of powers underpinning of the presumption of the unreviewability of administrative agency decisions not to pursue enforcement in particular instances. The judiciary is ill-equipped to oversee executive enforcement decisions, whereas the agency is equipped to decide where to focus scarce resources, how to handle delicate federal-state relations and how to evaluate the strengths and weaknesses of particular cases. A decision by this Court to review such agency actions could lead to court intervention in all decisions not to pursue further action after preliminary investigations. The appropriate place for changes of the type sought by appellant is through Congress, not through the judiciary.

### B. ·

Appellant also argues that the doctrine of "the law of the case" is applicable to this action. Appellant claims that by vacating the Georgia district court's decision, the Eleventh Circuit necessarily reversed the trial court's holding on the merits. Because the Eleventh Circuit ordered transfer of the case instead of affirming the district court's dismissal, the appellant argues that the Court implicitly decided that the FHWA action is judicially reviewable and its decision constitutes "the law of the case" which should not be redetermined by this Court.

This argument may have some intrinsic appeal but it is flawed for two reasons. First, the Eleventh Circuit never addressed the reviewability issue, it merely made a threshold decision that justice required the inclusion of South Carolina as a party to this suit. Moreover, even if we were to agree that "the law of the case" doctrine applies, the Eleventh Circuit opinion was issued twelve days before *Chaney*, which was relied on by the South Carolina district court as well as this Court. The *Chaney* decision permitted the district court to apply an exception to the "law of the case" doctrine to the extent that the Eleventh Circuit decision conflicted with *Chaney*. *See, Schultz v. Onan Corp.*, 737 F.2d 339, 345 (3d Cir.1984); *Zichy v. City of Philadelphia*, 590 F.2d 503, 508 (3d Cir.1979). Therefore, appellant's contention that the "law of the case" doctrine prohibits this Court from deciding the reviewability issue is without merit.

### C.

Finally, the appellant contends that, notwithstanding an adverse decision by this Court as to reviewability pursuant to the APA, it is a third party beneficiary of the agreement between South Carolina and the Department of Transportation with an independent right to enforce the contract. However, appellant did not make this claim in its complaint or amended complaint and it was not considered below. Therefore, absent exceptional circumstances, it may not be considered on appeal. *U.S. v. One 1971 Mercedes Benz*, 542 F.2d 912, 915 (4th

134

Cir.1976). No exceptional circumstances are present here.

For the reasons stated above, the district court's decision is

AFFIRMED.