**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1880**

RICHARD STOGSDILL; NANCY STOGSDILL, Parent of Richard Stogsdill, on behalf of themselves and other similarly situated persons; ROBERT LEVIN; MARY SELF, Parent of Robert Levin, on behalf of themselves and other similarly situated persons,

Plaintiffs - Appellants,

v.

ALEX M. AZAR, II, Secretary of Health and Human Services; ANTHONY KECK; SOUTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES; CMS; JOHN DOES 1-20; TIMOTHY HILL, Acting Director for the Center for Medicaid and CHIP Services,

Defendants - Appellees.

**No. 17-1916**

RICHARD STOGSDILL; NANCY STOGSDILL, Parent of Richard Stogsdill, on behalf of themselves and other similarly situated persons; ROBERT LEVIN; MARY SELF, Parent of Robert Levin, on behalf of themselves and other similarly situated persons,

Plaintiffs - Appellees,

v.

SOUTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Defendant - Appellant,

and

ANTHONY KECK; ALEX M. AZAR II, Secretary of Health and Human Services; CMS; JOHN DOES 1-20; TIMOTHY HILL, Acting Director for the Center for Medicaid and CHIP Services,

Defendants.

––––––––––––

Appeals from the United States District Court for the District of South Carolina, at Columbia.  Joseph F. Anderson, Jr., Senior District Judge.  (3:12-cv-00007-JFA)

––––––––––––

Argued:  January 29, 2019                              Decided:  March 12, 2019

––––––––––––

Before DUNCAN, AGEE, and HARRIS, Circuit Judges.

––––––––––––

Affirmed in part, vacated in part, and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Duncan and Judge Agee joined.

––––––––––––

**ARGUED:** Patricia L. Harrison, PATRICIA LOGAN HARRISON LAW OFFICE, Columbia, South Carolina, for Appellants/Cross-Appellees.  Damon C. Wlodarczyk, RILEY, POPE & LANEY, LLC, Columbia, South Carolina, for State Appellees/Cross-Appellants; Stephanie Robin Marcus, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Federal Appellees.  **ON BRIEF:** Chad A. Readler, Acting Assistant Attorney General, Alisa B. Klein, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Sherri A. Lydon, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina; Robert P. Charrow, General Counsel, Janice L. Hoffman, Associate General Counsel, Susan Maxson Lyons, Deputy Associate General Counsel for Litigation, Bridgette L. Kaiser, UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, Washington, D.C., for Federal Appellees.

––––––––––––

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Richard Stogsdill, Robert Levin, and their respective caretakers filed an action raising multiple challenges to South Carolina's Medicaid waiver program, which provides community-based services to certain individuals with severe disabilities. In a series of orders in this complex case, the district court dismissed all of the plaintiffs' claims against the federal government as unreviewable under the Administrative Procedure Act, dismissed Stogsdill's claims against the state on jurisdictional and abstention grounds, and entered judgment in favor of the state on most of the remaining claims.

For the reasons that follow, we affirm the judgments of the district court in nearly all respects. We do, however, find error in the dismissal of Stogsdill's claims against the state, and therefore vacate that judgment and remand for further proceedings on those claims alone.

**I.**

Richard Stogsdill and Robert Levin are severely disabled individuals who for many years have received services under South Carolina's Medicaid waiver program. That program, established under 42 U.S.C. § 1396n(c) and administered by the South Carolina Department of Health and Human Services ("DHHS"), allows the state to bypass the standard requirement that aid recipients live in institutions to receive certain Medicaid benefits. Instead, eligible recipients like Stogsdill and Levin may avoid institutionalization by receiving services in their homes or community-based settings.

3

On January 1, 2010, DHHS implemented amendments to its waiver program that capped certain community-based services and eliminated others altogether. As a result, both Stogsdill and Levin experienced reductions in the services they received. In response, Stogsdill, Levin, and their caretakers brought this action against DHHS and related state officials, as well as various federal officials of the U.S. Department of Health and Human Services. As relevant here, the plaintiffs' complaint raised claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Medicaid Act, the Administrative Procedure Act ("APA"), and the Due Process Clause of the U.S. Constitution.

The district court addressed those multiple claims in a series of carefully reasoned orders and a total of three separate bench trials. First, the district court dismissed the plaintiffs' claims against the federal defendants, which alleged that they had been derelict in their supervision of the South Carolina Medicaid program and failed to bring appropriate enforcement actions. General oversight of the state Medicaid program, the court concluded, is not the kind of federal agency action that is reviewable under the APA. The district court also held, in the alternative, that even if the plaintiffs' allegations against the federal defendants were reviewable under the APA, dismissal would be warranted because they failed to identify any arbitrary, capricious, or otherwise unlawful agency action, *see* 5 U.S.C. § 706(2)(A).

In a subsequent order, the district court dismissed all of plaintiff Stogsdill's claims against the state defendants. Stogsdill, the district court explained, had challenged the reduction in his services through the state administrative and court systems. And in a

4

recent decision, the South Carolina Court of Appeals had rejected several of his claims but agreed on others, and remanded to DHHS for "consideration of the appropriate services to be provided without the restriction of the 2010 Waiver." *Stogsdill v. S.C. Dep't of Health & Human Servs.*, 763 S.E.2d 638, 645 (S.C. Ct. App. 2014). As a result, the district court reasoned, it lacked jurisdiction to review Stogsdill's claim under the *Rooker-Feldman* doctrine, which bars lower federal courts from reviewing state-court judgments, *see Thana v. Bd. of License Comm'rs for Charles Cty.*, 827 F.3d 314, 318–19 (4th Cir. 2016). And even if it had jurisdiction, the district court concluded, traditional principles of abstention counseled against exercising that jurisdiction in light of the state proceedings.

In the same order, the district court addressed and rejected plaintiff Levin's due process claims, granting summary judgment to the state defendants on that issue. Levin's claim that he was "denied the opportunity for review" when his services were reduced without a proper hearing, the court explained, could not constitute a due process violation because Levin had the opportunity to request a hearing but failed to do so. J.A. 2564. "Levin's own failure to appeal" his reduction in services, the court concluded, "does not give rise to a violation of his due process rights at the hands of the defendants." *Id.*

The district court then turned to Levin's ADA and Rehabilitation Act claims, the subject of a two-day bench trial in February 2015. Following the trial, the court entered judgment in favor of the state defendants, finding that Levin had failed to make the threshold showing required by both statutes: that the 2010 reduction in his services

5

placed him at an increased risk of institutionalization. In the alternative, the district court also found that Levin's ADA and Rehabilitation Act claims were time-barred.

The district court held a second bench trial in April and May of 2015, this time on Levin's § 1983 claims, predicated on alleged violations of the Medicaid Act. Following the trial, the court entered judgment in favor of the state defendants on most of these claims. It did, however, rule in Levin's favor on one particular claim, finding that the state defendants had not complied with their Medicaid Act duty to inform waiver participants of feasible alternatives to institutionalization when their services are reduced. *See* 42 U.S.C § 1396n(c)(2)(C). Because subsequent events had cured the problem, however, the court granted declaratory relief only, finding injunctive relief unnecessary.

At that point, the case made its way to the Fourth Circuit for the first time. The plaintiffs appealed the district court's rulings in the state defendants' favor, and the state defendants cross-appealed the grant of declaratory relief on Levin's "duty to inform" claim. This court dismissed the appeals without reaching the merits, finding that we lacked jurisdiction because the district court had not ruled on the plaintiffs' distinct retaliation claims under the ADA – through no fault of its own, given the complexity of the plaintiffs' complaint and the minimal factual development of the retaliation claims – and thus had not issued a final judgment. *Stogsdill v. S.C. Dep't of Health & Human Servs.*, 674 F. App'x 291, 293–94 (4th Cir. 2017). We remanded the case for the district court to dispose of the retaliation issue in the first instance. *Id.* at 294.

On remand, the district court denied the state defendants' motion for judgment on the pleadings and held a final, four-day bench trial on the plaintiffs' retaliation claims.

6

Following trial, the court issued a written opinion concluding that the plaintiffs had not shown by a preponderance of the evidence that the state defendants retaliated against them in violation of the ADA.

## II.

That brings us to the present appeal, in which the plaintiffs raise four primary arguments. First, they challenge the district court's dismissal of their claims against the federal defendants under the APA. Next, Levin challenges the district court's ruling in favor of the state defendants on his ADA and Rehabilitation Act claims. Levin also contends that the district court erred in dismissing his constitutional due process claim. And, finally, Stogsdill challenges both the district court's finding that it lacked jurisdiction to review his claims under the *Rooker-Feldman* doctrine, and its alternative decision to abstain from exercising jurisdiction.[1]

We largely agree with the district court's careful disposition of these claims, and affirm its findings in most respects. We do, however, find that the district court erred in

---

[1] The state defendants again filed a cross-appeal, but we need not discuss it at length. As they acknowledged at oral argument, their first argument – that the district court erred in denying their motion for judgment on the pleadings on the retaliation claims, and instead ruled for them after a trial – cannot proceed: As a general rule, a party may not appeal a favorable judgment. *See HCA Health Servs. of Va. v. Metro Life Ins. Co.*, 957 F.2d 120, 123 (4th Cir. 1992). The state defendants also reprised their challenge to the district court's grant of declaratory judgment to Levin on his "duty to inform" claim. But as they also acknowledged at oral argument, DHHS has since updated its notice practices to conform to the district court's ruling. In light of these updated notice practices, the state defendants did not press this claim at argument, and we do not address it further.

dismissing Stogsdill's claims against the state defendants for lack of jurisdiction under the *Rooker-Feldman* doctrine and in otherwise abstaining from reviewing the claims. We address each of the plaintiffs' claims in turn.

**A.**

We turn first to the dismissal of the plaintiffs' claims against the federal defendants. The district court determined that it lacked subject matter jurisdiction over those claims because the challenged federal actions are not reviewable under the APA. We agree.

The APA "creates a basic presumption of judicial review for one suffering legal wrong because of agency action." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (internal quotation marks and alteration omitted). As the district court explained, however, that review is limited to "final agency action," 5 U.S.C. § 704, and does not extend to an agency's continuing operations or to "broad programmatic attack[s] on the government's operation," *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (internal quotation marks omitted). Nor may federal courts review actions that are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), a category that includes agency enforcement decisions. *See Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985).

As the district court concluded, those limits preclude APA review of the plaintiffs' allegations that the federal defendants failed to properly oversee South Carolina's Medicaid program or to undertake enforcement actions against DHHS's purported violations of the Medicaid Act. Most fundamentally, a federal agency's day-to-day

8

monitoring of compliance and its decisions with respect to enforcement are committed to an agency's discretion and hence unreviewable under the APA. *See Clear Sky Car Wash LLC v. City of Chesapeake*, 743 F.3d 438, 445 (4th Cir. 2014); *Sierra Club v. Larson*, 882 F.2d 128, 131 (4th Cir. 1989). And "broad, general allegations" about the federal defendants' administration of the Medicaid Act do not identify the kind of "final agency action" that is a prerequisite to judicial review. J.A. 286.

The plaintiffs cannot avoid this result by pointing to the federal defendants' specific approval of South Carolina's 2010 amendments to its waiver program as the agency action in question. As the federal defendants argue and the district court explained, federal approval of the 2010 amendments did not relieve the state defendants of their ADA and Rehabilitation Act obligations, and thus did not cause the injuries of which the plaintiffs complain. *See id.* ("Plaintiffs cannot [show a reviewable 'final agency action'] because they fail to identify a specific final agency action that has caused their alleged injuries and instead make only broad, general allegations about [the federal defendants] and their duties in administering the Medicaid Act.").

And in any event, we agree with the federal defendants that even if a challenge to their approval of the 2010 amendments were reviewable under the APA, it would be moot: The federal defendants have since approved new changes to the South Carolina waiver program that address the central issue in this case by allowing for exceptions to service reductions and caps where a waiver participant is at a risk of institutionalization. The plaintiffs have not challenged these new provisions, nor their approval by the federal defendants. Because the only approvals the plaintiffs do challenge are no longer in

9

effect, their claims for injunctive relief against the federal defendants are moot. *See Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 749 (4th Cir. 2018) ("[A] case is moot when the issues presented are no longer live . . . ." (internal quotation marks omitted)).

**B.**

We turn next to the district court's entry of judgment for the state defendants on Levin's claims under the ADA and Rehabilitation Act. Title II of the ADA and § 504 of the Rehabilitation Act protect individuals with disabilities from "unjustified institutional isolation," *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013) (internal quotation marks omitted), requiring that services be provided in integrated, community-based settings where appropriate, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 607 (1999). Levin claims that South Carolina's 2010 reductions to community-based services violated the ADA and § 504 because they placed him, and others like him, at serious risk of institutionalization.

The district court conducted a two-day trial on Levin's claims and ultimately rejected them, finding that Levin had failed to show by a preponderance of the evidence that the 2010 reduction in his services – from 56 hours per week to 49 hours per week – placed him at any increased risk of institutionalization. As the district court explained at length, Levin's treating physician testified that Levin indeed was at risk of institutionalization as a general matter, given the severity of his disabilities. But he did not attribute any portion of that risk to the 2010 service reductions that Levin challenges. Instead, his testimony was to the contrary: "Most importantly, [the doctor] testified that

10

if Levin's care remains at its current level (i.e. 2010 reduced level), Levin is at no greater risk of institutionalization than he has always been given his condition." J.A. 2910.

We review judgments following a bench trial under a mixed standard: "[F]actual findings may be reversed only if clearly erroneous, while conclusions of law are examined de novo." *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 215 (4th Cir. 2011) (internal quotation marks omitted). We find no basis for disturbing the district court's conclusion that Levin failed to show the risk of institutionalization required to prevail on his ADA and Rehabilitation Act claims, and therefore affirm the judgment of the district court.[2]

## C.

Levin also appeals the district court's grant of summary judgment to the state defendants on his constitutional due process claim. The sole allegation in support of Levin's claim is that he was "denied the opportunity for review" of the 2010 reduction in his services. But as the district court explained – and Levin does not dispute – Levin in fact could have obtained review of that reduction: He could have requested

---

[2] Given this disposition, we need not address the district court's alternative ground for entering judgment for the state defendants: that Levin's ADA and Rehabilitation Act claims were untimely under a one-year statute of limitations borrowed from South Carolina's Human Affairs Law. *See Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567–68 (4th Cir. 2017) (discussing "borrow[ing]" of analogous state limitations periods in ADA and Rehabilitation Act cases). We note, however, that *Semenova*, which issued only after the district court's decision in this case, clarifies the circumstances under which it will be appropriate in an ADA or Rehabilitation Act case to borrow a limitations period from an anti-discrimination law like South Carolina's Human Affairs Law, rather than a state's ordinary statute of limitations for civil actions. *Id.*

reconsideration of the reduction in services, and he could have appealed the reduction administratively to DHHS. That Levin, believing appeal to be "futile," did not avail himself of those opportunities, "does not give rise to a violation of his due process rights at the hands of the defendants." J.A. 2564. For the reasons given by the district court, we affirm the grant of summary judgment to the state defendants on this claim.[3]

**D.**

That leaves the final issue on appeal: the district court's determination that it lacked jurisdiction to review Stogsdill's claims against the state defendants under the *Rooker-Feldman* doctrine, which "preclude[s] [lower federal courts] from exercising appellate jurisdiction over final state-court judgments," *Thana*, 827 F.3d at 319 (internal quotation marks omitted). Applying that doctrine, the district court found that it could not review Stogsdill's claims because Stogsdill in effect was seeking relief from the order of the South Carolina Court of Appeals, addressing many of the same claims he is pressing in this federal action.

We cannot agree. When it issued its ruling, the district court did not have the benefit of this court's 2016 decision in *Thana*, clarifying the "narrow and focused" nature

---

[3] In his brief on appeal, Levin uses the rubric of "due process" to describe two additional claims, both brought under § 1983 and related to a request Levin made in 2014 for additional nursing services. Specifically, Levin claims that the state defendants failed to provide him with notice required by 42 C.F.R. § 431.210 after he made his request, and then failed to provide services with reasonable promptness in violation of 42 U.S.C. § 1396a(a)(8). The district court did not reach the merits of those claims, finding that they were not ripe for review because no final agency decision had been made on Levin's 2014 request. Levin has not challenged that ripeness determination on appeal. Accordingly, we affirm the entry of judgment for the state defendants on all of Levin's remaining § 1983 claims.

of the *Rooker-Feldman* doctrine. *Id.* at 319. That doctrine, we explained, is strictly confined to cases brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced . . . ." *Id.* at 320 (internal quotation marks and alterations omitted) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Here, by contrast, the South Carolina state court judgment was handed down only *after* Stogsdill had commenced this federal court action, so it is clear that he was not seeking redress from that decision itself. And more fundamentally, we made clear in *Thana* that where, as here, a federal court litigant seeks review of state *administrative* actions, the *Rooker-Feldman* doctrine has no application "as a categorical matter." *Id.* at 321.

Nor, we conclude, can any prudential abstention doctrine justify the dismissal of Stogsdill's claims. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and none of the narrow exceptions to that rule applies in this case. Under *Colorado River* abstention, for instance, a federal court may in limited and "exceptional" circumstances abstain from deciding claims to avoid duplicative litigation when faced with parallel federal and state proceedings. *Id.* at 813, 817–19. But there are questions about whether the proceedings here are sufficiently parallel under *Colorado River*, given differences between the parties and the claims at issue in Stogsdill's state proceeding and this federal action. *See Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464–65 (4th Cir. 2005) (finding that federal action for violations of federal Medicaid law is not "parallel" to state administrative appeals where parties overlap but

13

are not the same and scope of claims differs).  And in any event, as we have explained, where the source of law to be applied is federal and not state, that factor "strongly counsels in favor of the district court's exercising jurisdiction."  *Id.* at 466.  Similarly, although "*Burford* abstention" allows a court – though only "rarely" – to refrain from exercising jurisdiction where "federal adjudication would unduly intrude upon complex state administrative processes," *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (internal quotation marks omitted), we have held already that Medicaid, a "subject of both state and federal concern," is "not the sort of comprehensive [state] regulatory system" that triggers *Burford* abstention, *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 665 (4th Cir. 1989).[4]

Accordingly, we find that the district court erred in refusing to exercise jurisdiction over Stogsdill's claims against the state defendants.  That does not mean, of course, that Stogsdill's state proceedings should have no effect on the disposition of his federal claims.  Ordinary preclusion principles still apply.  *See Thana*, 827 F.3d at 320 (explaining that preclusion principles, rather than the *Rooker-Feldman* doctrine, "address the tension between two concurrent, independent suits that . . . address the same subject matter, claims, and legal principles").  It appears that Stogsdill's state proceedings are now complete, in which case "the claim- and issue-preclusive effects of [the] state court

---

[4] As the state defendants acknowledge, because Stogsdill seeks injunctive as well as declaratory relief, this case is not governed by the "*Brillhart/Wilton*" standard, which gives district courts substantial discretion to refrain from exercising jurisdiction under the Declaratory Judgment Act.  *See VonRosenberg v. Lawrence*, 781 F.3d 731, 734 (4th Cir. 2015).

14

judgment" may narrow the questions that remain to be decided in federal court, *Exxon Mobil*, 544 U.S. at 293. That issue has not been briefed on appeal, and we leave it to the district court to address on remand.

## III.

For the foregoing reasons, we affirm the district court's dismissal of all claims against the federal defendants, as well as its judgment as to all of Levin's claims against the state defendants. With respect to Stogsdill's claims against the state defendants, we vacate the district court's dismissal and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*