**Frank CAPRIO, Plaintiff-Appellant,**

v.

**Bob WILSON, Defendant-Appellee**

**No. 74–2011.**

United States Court of Appeals, Ninth Circuit.

April 8, 1975.

John Stephens, La Jolla, Cal., for plaintiff-appellant.

James J. Biggins, Jr., of Smith, Biggins, & Bollman, San Diego, Cal., for defendant-appellee.

## OPINION

Before CARTER, WRIGHT, and GOODWIN, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

This is an appeal from the judgment of the district court, denying injunctive relief or an award of damages although finding in appellant's favor on the mer- ·its. Appeal is also taken from an order made during the course of the action, denying appellant's motion to join an involuntary plaintiff under Fed.R.Civ.P. 19(a). We affirm.

Appellee Wilson is an incumbent Congressman and appellant Caprio was his 1972 Democratic challenger. Shortly before the primary and general elections, Wilson mailed, under his frank, several hundred thousand copies of *Bob Wilson Reports,* a congressional newsletter. Had the *Reports* been mailed at then-prevailing first-class rates, the cost to

Wilson would have been $36,352.96. Wilson's district had been redistricted for the 1972 election; the *Reports* were sent to both the new and old district areas.

Appellant brought this action under 39 U.S.C. § 3210 et seq., claiming that Wilson had misused the franking privilege by mailing the *Reports*. During the course of the proceedings, appellant moved to have the United States Post Office joined as an involuntary plaintiff. The motion was denied.

■■■ The district court found that Wilson's actions in using his frank for campaign mailing were illegal, but concluded that: (1) injunctive relief was improper because the new statute, signed into law on December 18, 1973, as P.L. 93–191, 87 Stat. 737, redefined the franking privileges of members of Congress in a manner that reduced the ,likelihood of future violations under the new law; (2) with respect to damages, "there is no proof offered suggesting that the defendant's abuse caused plaintiff to lose the election. The real damages that have accrued from misuse of the frank are caused to the taxpayer. Awarding a monetary judgment could, therefore only work to give the plaintiff an unfair windfall profit of $36,352.96."

We conclude that the refusal to award damages or injunctive relief was proper for the reasons stated by the district court.

The refusal to join the Post Office as an involuntary plaintiff was also proper. Appellant points to language in Fed.R. Civ.P. 19(a) that if a party "should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff." He contends that since the Post Office is precluded from joinder as a defendant due to the doctrine of sovereign immunity and since joinder is desirable—the Post Office being the real party in interest and necessary to render complete relief—its joinder as plaintiff should have been compelled.

We conclude that appellant's argument, although ingenious, would if adopted require an unwarranted exten-sion of the involuntary plaintiff doctrine established under Rule 19(a) and prior case law.

"The development of the practice of joining a party as an involuntary plaintiff was a response to an historical anomally that culminated in the Supreme Court's decision in Waterman v. Mackenzie, [138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891)] which held that even in equity the exclusive licensee of a patent must bring an infringement action in the name of the patent owner." 7 Wright & Miller, Federal Practice and Procedure § 1606, at p. 50. Where the patent owner is outside the jurisdiction of the court and refuses to prosecute or join his exclusive licensee's infringement action, he may be made an involuntary plaintiff. Independent Wireless Tel. Co. v. Radio Corp. of America, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926).

In *Independent Wireless Tel. Co., supra,* the Supreme Court held that inasmuch as the relationship between the patent owner and his exclusive licensee was akin to a trust relationship, the owner was under an obligation to allow the exclusive licensee to use his name to prosecute an infringement action. *Id.* at 469, 46 S.Ct. 166. This reasoning formed the basis for Rule 19(a) and occasioned the extension of the involuntary plaintiff doctrine to the exclusive licensee or equitable owner of a copyright. *See, e. g.,* Cable Vision, Inc. v. KUTV, Inc., 335 F.2d 348, 353–54 (9 Cir. 1964), cert. denied sub nom. KLIX Corp. v. Cable Vision, Inc., 379 U.S. 989, 85 S.Ct. 700, 13 L.Ed.2d 609 (1965).

■■■ We agree with Professors Wright and Miller, however, that in light of the original purpose for the Rule and its use almost exclusively in patent and copyright infringement cases, "the authorization in Rule 19(a) to join a party as an involuntary plaintiff may be invoked only when the party sought to be joined has a duty to allow plaintiff to use his name in the action." 7 Wright & Miller, Federal Practice and Procedure § 1606, 1974 Pocket Part at 6. *See* Coast v. Hunt Oil Co., 195 F.2d 870, 872 (5 Cir.

1952), cert. denied, 344 U.S. 836, 73 S.Ct. 46, 97 L.Ed. 651.

 In the present case, no trust relationship exists between appellant and the Post Office. Each has an independent right which may be exercised. The Post Office is under no obligation to allow its name to be used by appellant. Whether the Post Office should of its own volition commence or join in such an action rests in its sound discretion. Fed.R.Civ.P. 20. In view of the breadth of the new statute of December 18, 1973, P.L. 93–191, 87 Stat. 737, the problem will be unlikely to arise again. We express no views on what the Post Office should do if the problem does arise.

The district court properly denied the motion to join the Post Office as an involuntary plaintiff.

The judgment of the district court is affirmed.